# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 17-cr-137 |
| | : | |
| vs. | : | Hon. Paul S. Diamond |
| | : | |
| RUFUS SETH WILLIAMS | : | (Electronically filed) |

# ORDER

    *AND NOW*, this ____ day of _____, **2017**, upon consideration of the within Motion to Withdraw it is hereby **ORDERED** and **DECREED** that the motion is **GRANTED**.  Michael J. Diamondstein is hereby removed as counsel of record.

    **By the Court:**

    _____
    **J.**

1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 17-cr-137 |
| | : | |
| vs. | : | Hon. Paul S. Diamond |
| | : | |
| RUFUS SETH WILLIAMS | : | (Electronically filed) |

## MOTION TO WITHDRAW

**AND NOW**, Michael J. Diamondstein, hereby moves this Court to allow Michael J. Diamondstein to withdraw as attorney of record. In support of this motion, undersigned counsel avers as follows:

1. The Government had apparently been conducting an investigation into acts allegedly committed by Rufus Seth Williams, the District Attorney of Philadelphia.

2. At some point in time, Mr. Williams was made aware of the investigation averred in paragraph one (1).

3. To the best of undersigned counsel's information and belief the City of Philadelphia retained John J. Pease, III, Esquire to assist Mr. Williams.

4. To the best of undersigned counsel's information and belief, Mr. Pease represented Mr. Williams during the investigation.

2

5. To the best of undersigned counsel's information and belief, any representation offered by Mr. Pease would be terminated if Mr. Williams was charged with a crime.

6. At some point on Monday, March 20th, 2017 it became apparent that Mr. Williams would be charged.

7. At 6:55 pm on Monday, March 20th, 2017, Mr. Pease advised undersigned counsel that he would be unable to move forward as Mr. Williams' attorney and could not handle the Initial Appearance.

8. On Tuesday, March 21st, 2017 undersigned counsel spoke with Robert Zauzmer, AUSA regarding Mr. Williams' matter.

9. In summary, Mr. Zauzmer advised that Mr. Williams was going to be indicted forthwith and that an Initial Appearance would likely be held soon.

10. Undersigned counsel advised Mr. Zauzmer that – due to a host of issues including but not limited to whether Mr. Williams could afford to have privately retained counsel handle trial and whether undersigned counsel had conflicts representing the sitting District Attorney in a criminal case – he was not in a position to enter a regular appearance.

11. Undersigned counsel advised the Government that he would only be able to enter a limited appearance for the Initial Appearance only.

3

He further advised that if the appearance was not accepted, he would not be able to handle said appearance.

12. Mr. Zauzmer, on behalf of the Government, had no objection to undersigned counsel's intention to enter a limited appearance for the Initial Appearance only.

13. On Wednesday, March 22nd, 2017, undersigned counsel appeared on Mr. Williams' behalf for the scheduled Initial Appearance.

14. While in court but before the hearing commenced, undersigned counsel filled out a handwritten "Limited Appearance for Initial Appearance Only Appearance of Counsel". <u>See</u> Exhibit 1 attached.

15. The Honorable Richard Lloret was the assigned Magistrate Judge.

16. Once the hearing was called to Order the Government's attorneys were identified.

17. When called upon, undersigned counsel stated "Your Honor, Good Afternoon, Michael Diamondstein. As I believe the Court may be aware, due to the nature of the way this case came about, logistically I'm unable to enter a full appearance today. My understanding is

        that the Government will not object to my limited appearance for the purpose of the initial appearance only."[1]

18.     Judge Lloret responded "I understand."[2]

19.     Had Judge Lloret not accepted the Limited Appearance, undersigned counsel would have not proceeded on Mr. Williams' behalf and he would have left the courtroom.

20.     At the conclusion of the hearing, undersigned counsel spoke briefly with the Honorable Paul S. Diamond's [hereinafter 'the Court"] courtroom deputy [hereinafter "Deputy"].

21.     In that short conversation, undersigned counsel briefly advised the Deputy that there were issues surrounding the representation of Mr. Williams.

22.     The Deputy advised undersigned counsel to write the Court an email.

---

[1] This quote was not taken from an official transcript. Due to the nature of the timing of the filing of this motion, the quote was taken from an audio transcript. If the quote differs from the official transcript, undersigned counsel defers to the same.

[2] See Note 1 Supra.

23. Undersigned counsel after years of federal practice takes the direction of a deputy of a Federal Judge as if it was spoken by the judge him/herself.

24. Shortly after the Initial Appearance, at 2:59 p.m., the Deputy sent an email advising that the Court wished to hold a Case Management conference. The email requested counsel to agree on a list of provided dates. After a number of emails, the date was agreed upon.[3]

25. As the Court had scheduled a Case Management conference, undersigned counsel had no longer intended to address any issues with the Court by letter.

26. However, so as not to directly contravene the direction of a Deputy of a Federal Judge, undersigned counsel deemed it prudent to inquire of the Deputy if the Court still wished to receive a letter listing the issues surrounding the Limited Appearance prior to the Case Management conference.

27. As such, at 4:29 p.m. on the 22nd, undersigned counsel sent an email to the Deputy and the other attorneys on the email chain asking "[d]oes the Court still wish me to send an email to outline my issues or would he rather address them next week at the conference?". Said

---

[3] All of the emails referred to in this motion are in the possession of undersigned counsel. Undersigned counsel is not aware of a legal basis to file the same under seal. Thus, to avoid publishing names and email addresses of the parties to the emails, undersigned counsel has not attached the same as Exhibits to this motion. If the Court Orders, undersigned counsel will file the emails in question.

email was sent off of the same email chain used to set the Case Management conference.

28. On March 23rd, 2017 at 8:49 a.m. in response to undersigned counsel's question in paragraph 26, the Deputy responded directly to counsel via email and wrote "[y]es. Please send an email. Sooner rather than later. Thanks."

29. After receiving the email averred to in paragraph 27, a number of emails were exchanged between the Deputy and undersigned counsel; including an email in which the Deputy directed undersigned counsel "[O]K. Please address the letter to the Judge. Thanks!"

30. In summary, those emails dealt with timing and the necessity of whether to file a motion to seal.

31. Undersigned counsel, not wishing to disobey the instruction of the Deputy of a Federal judge, composed the letter as directed.

32. An email with the letter (Document 11 of record) and a Motion to Seal were emailed to all parties on March 23rd, 2017 at 1:53 p.m.

33. On March 24th, 2017, the Court filed the letter (Document 11) and deemed it to be a Motion to Withdraw. The Court issued an Order finding the letter frivolous. The Court found that undersigned counsel is counsel of record.

34. Undersigned counsel respectfully submits that he is, as a matter of law, not counsel of record.

35. There is some authority in the Eastern District of Pennsylvania to indicate that Limited Appearances are not accepted.

36. In <u>United States v. Heron</u>, 513 F.Supp.2d 393 (E.D.Pa. 2007)(Dazell, J.) the Court was faced with a criminal case in which a large local law firm was retained in 2004 to handle Mr. Heron's securities violation. For approximately two (2) years, the law firm represented Heron. The law firm was paid by Heron for the work that it did. Heron was later charged by complaint. At Heron's Initial Appearance, two (2) attorneys from the law firm styled "a limited appearance for the purposes of this hearing." The magistrate replied "okay".

On December 3rd, 2006, four (4) days before Heron's arraignment another law firm entered their appearance. At the arraignment, only the second law firm appeared on Mr. Heron's behalf. After the arraignment, Heron entered into a retainer agreement with the second firm and paid a modest retainer. Nearly five (5) months later, both law firms sought leave to withdraw. Both firms had differing reasons to withdraw. However, in essence, the withdraw was over the non-payment of legal fees and the fear that the law firms would not be paid in the future.

The District Court denied both law firms leave to withdraw. The Court cited a lawyer's duty to give the client reasonable notice of

8

> the lawyer's actions such that the client will not be left in a worse position because of the lawyer's withdraw. The Court also found that the fear that a lawyer will not be paid in the future is not a basis to withdraw from a case. The Court, in a footnote, noted that while Heron had funds to pay an attorney, he could be prejudiced by the withdraw. The Court also noted that such a result would cause prejudice to the Court.

37. Undersigned counsel most respectfully submits that the facts in this case are distinguishable. Mr. Williams had been represented by long time counsel who was unable to continue as counsel of record. As the Government was intending to move forward with the Indictment on relatively short notice, Mr. Williams needed representation for his Initial Appearance. The complexities and novel nature of representing a sitting District Attorney in a criminal matter are extremely detailed and complex. Due to the emergent nature of Mr. Williams' needs, undersigned counsel did not have the time to fully vet the issue with the District Attorney's Office, the Court of Common Pleas in Philadelphia and/or ethics counsel.

    Unlike the Heron matter, which is essentially little more than a fee dispute, undersigned counsel had to appear in an emergent matter for a client whose representation comes with unusual and novel ethical challenges. Additionally, in the case sub judice, prior to the Initial Appearance the Government was advised of undersigned counsel's intention to enter a Limited Appearance and the reasons for the same. With that knowledge, the Government specifically consented to the Limited Appearance for the Initial Appearance only. Undersigned counsel relied upon the Government's agreement to the Limited Appearance and Judge Lloret's acceptance

of the same. Mr. Williams, unlike the appellant in <u>Heron</u>, benefited from undersigned counsel's work and assistance and is not left in a worse position as a result the legal work provided by him. Finally, while undersigned counsel cannot proffer what Judge Lloret knew prior to the hearing, members of the court staff were aware that undersigned counsel intended to enter a Limited Appearance for the Initial Appearance only.

38. For all of the foregoing reasons, undersigned counsel submits that as a matter of law he is not currently counsel of record.

39. In the alternative, if the Court disagrees with the above averments, undersigned counsel petitions the Court to allow him to withdraw as counsel of record.

40. Undersigned counsel incorporates all of the preceding paragraphs and avers as follows.

41. Undersigned counsel has a significant number of cases in the Philadelphia Municipal Court and Court of Common Pleas.

42. Subsequent to Mr. Williams' Initial Appearance undersigned counsel has had conversations with judges on the Philadelphia Court of Common Pleas, the Philadelphia District Attorney's Office and ethics counsel.

43. Based upon the same, undersigned counsel submits that as long as Mr. Williams is the sitting District Attorney, there exists a conflict.

44. Undersigned counsel additionally submits that Mr. Williams does not have the financial ability to retain him for trial in this matter.

45. Robert Zauzmer, AUSA has been advised of this request to withdraw and on behalf of the Government does not object to the same.

46. As Mr. Williams was advised of the potential that undersigned counsel may not be able to continue to represent him, there is no prejudice to him.

47. As, at the time of this filing, only two (2) days have passed since the initial appearance and no discovery has been provided, there is no prejudice to the Court.

*Wherefore*, for all of the foregoing reasons, it is respectfully requested that this motion be **GRANTED**.

**Respectfully submitted**,

Dated: **March 24th, 2017**        */s/ Michael J. Diamondstein*
   **MICHAEL J. DIAMONDSTEIN**
   Suite 900
   Two Penn Center
   1500 John F. Kennedy Boulevard
   Philadelphia, Pennsylvania  19102
   (215) 940-2700
   mjd@michaeldiamondstein.com

**CERTIFICATE OF SERVICE**

And now, on the **24th** day of **March, 2017**, Michael J. Diamondstein, being duly sworn according to law, hereby certifies that a true and correct copy of the foregoing motion was served upon the following individuals via **ECF**:

    **The Honorable Paul S. Diamond**
    **United States District Court**
    **U.S. Courthouse**
    **601 Market Street**
    **Philadelphia, Pennsylvania 19106-1797**

    **Robert Zauzmer, Esquire**
    **Vineet Gauri, Esquire**
    **Eric Moran, Esquire  (Via email only)**
    **U.S. Attorney's Office**
    **615 Chestnut Street, Suite 1250**
    **Philadelphia, Pennsylvania 19106**

    **Michael E. Kunz, Clerk of Court**
    **United States District Court**
    **2609 U.S. Courthouse**
    **601 Market Street**
    **Philadelphia, Pennsylvania 19106-1797**

                          */s/ Michael J. Diamondstein*
                          **Michael J. Diamondstein**