```
                  UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA .     Case No. 2:17-cr-00137-PD-1
                         .
            Plaintiff,   .
                         .     U.S. Courthouse
       v.                .     601 Market Street
                         .     Philadelphia, PA 19106
RUFUS SETH WILLIAMS,     .
                         .
                         .
            Defendant.   .
                         .     March 28, 2017
. . . . . . . . . . . ..        2:52 p.m.
```

                    TRANSCRIPT OF HEARING
            BEFORE HONORABLE TIMOTHY R. RICE
               UNITED STATES DISTRICT JUDGE

APPEARANCES:

```
For United States of      ERIC MORAN
America:                  US ATTORNEY'S OFFICE
                          402 East State Street
                          Trenton, NJ 08608

                          ROBERT A. ZAUZMER
                          VINEET GAURI
                          US ATTORNEY'S OFFICE
                          615 Chestnut Street, Ste. 1250
                          Philadelphia, PA 19106

For Rufus Seth Williams:  MICHAEL J. DIAMONDSTEIN
                          BORUM BURKE & DIDONATO LLC
                          Two Penn Center Plaza
                          1500 John F. Kennedy Blvd. Ste. 900
                          Philadelphia, PA 19102

Audio Operator:           NELSON

Transcriber:              UBIQUS REPORTING, INC.
                          61 Broadway, Suite 1400
                          New York, NY 10006
                          212-346-6666
                          Email: infousa@ubiqus.com
```

                Proceedings recorded by electronic sound
          recording, transcript produced by transcription service.

2

## I N D E X

PAGE

HEARING                                                           3

HEARING                                    3

1            THE CLERK:  Timothy R. Rice presiding.

2            THE COURT:  Good afternoon everyone.

3            ALL:  Good afternoon, Your Honor.

4            MALE VOICE:  Good afternoon.

5            THE COURT:  I wanted everybody to be seated.  I want

6    swearing Mr. Williams if you wouldn't mind because I have some

7    questions for him.

8            MALE VOICE:  Raise your right hand.  Do you swear and

9    or affirm that the testimony you should give before this Court

10   shall be the truth, the whole truth, and nothing but the truth

11   so help you God?  And you do so affirm?

12           MR. RUFUS SETH WILLIAMS:  I do.

13           MALE VOICE:  Please say your full name for the

14   record?

15           MR. WILLIAMS:  R. Seth Williams.

16           MALE VOICE:  Thank you.

17           THE COURT:  All right.  Mr. Williams, thank you.

18           MR. WILLIAMS:  Good afternoon.

19           THE COURT:  Have a seat.  Good afternoon.  Mr.

20   Diamondstein, good afternoon.

21           MR. MICHAEL J. DIAMONDSTEIN:  Good afternoon.

22           THE COURT:  Mr. Zauzmer?

23           MR. ROBERT A. ZAUZMER:  Sir.

24           THE COURT:  And Mr. Gauri.  And who else you have

25   with you?

1            MR. ERIC MORAN:  Good afternoon, Your Honor.

2   Assistant US Attorney Eric Moran, Your Honor.

3            THE COURT:  All right.  Mr. Moran, oh you're from New

4   Jersey?

5            MR. MORAN:  I am, sir.

6            THE COURT:  Welcome.

7            MR. MORAN:  Thank you.

8            THE COURT:  Our Court Reporter is Nelson.  Everybody

9   knows him.  You can be seated Mr. Diamondstein.

10            MR. DIAMONDSTEIN:  Thank you.

11            THE COURT:  And everyone knows Ms. Settles who is an

12   institution here in the Courthouse.  Thanks for your patience.

13   Mr. Diamondstein, Judge Diamond referred your motion to

14   withdraw to me.  And I'm going to chat with you a little bit

15   about that.  But before I do that, I just wanted to get Mr.

16   Williams position on it and figure out where he stands.

17   Because it's very important that we get the situation of

18   counsel resolved today hopefully.  So, Mr. Williams, have you

19   read the motion to withdraw?  You don't have to stand.

20            MR. WILLIAMS:  Good afternoon, Your Honor.

21            THE COURT:  Good afternoon.

22            MR. WILLIAMS:  Please the Court.  We spoke briefly.

23   I didn't read his motion necessarily.  But we spoke about it.

24   I fully understand all of the issues as to why, Your Honor, we

25   had hoped my previous attorney was Mr. Peace [phonetic] of

1    Morgan Lewis.

2              THE COURT:  Right.

3              MR. WILLIAMS:  Who was representing me, Your Honor.

4    And we had hoped that this matter was going to resolve itself

5    with an indictment.  That happened much quicker than we had

6    expected.  And as a result of that, we came to Court last

7    Wednesday.  And Mr. Diamondstein at the last minute agreed.

8    And it was my understanding that he had the agreement of the

9    government, Your Honor, for him to enter a limited appearance

10   solely for the purpose of my arraignment.

11             THE COURT:  Well unfortunately I know Mr. Zauzmer is

12   also in institution here as is Mr. Diamondstein.  But even Mr.

13   Zauzmer doesn't have the authority to authorize a limited

14   appearance.  There is local rules that we have here.  The rules

15   are pretty explicit.  Do you want to take a moment to read Mr.

16   Diamondstein's motion so you understand it before we proceed?

17   Because you said you haven't read it yet.

18             MR. DIAMONDSTEIN:  I did email it to Mr. Williams but

19   I should have a copy for him if you'd like to take a moment to

20   look at it.

21             THE COURT:  Do you want to take a moment to do that?

22             MR. WILLIAMS:  Certain, Your Honor.

23             THE COURT:  All right.  Should we take a recess and

24   I'll give you time?

25             MR. WILLIAMS:  Thank you.

1          THE COURT:  We can give you a room outside.  You can

2     talk to Mr. Diamondstein.  I just want to make sure you're

3     familiar with what's in it before we proceed.  Okay?  We'll

4     take a brief recess.

5          MR. DIAMONDSTEIN:  Thank you.

6          THE COURT:  Thanks.

7          THE CLERK:  All rise.

8          [Recess]

9          [OFF THE RECORD]

10         [ON THE RECORD]

11         THE COURT:  All right.  Everybody have a seat.  Did

12    you have enough time Mr. Williams to review the motion?

13         MR. WILLIAMS:  Yes, Your Honor, I have.

14         THE COURT:  Okay.  And you retained Mr. Diamondstein

15    for this case.  Is it your position that he can withdraw?

16         MR. WILLIAMS:  Yes, Your Honor.

17         THE COURT:  And do you have another lawyer who is

18    going to represent you?

19         MR. WILLIAMS:  Your Honor, I believe that I will have

20    an attorney retained by Monday.  I understand--possibly even

21    Friday.

22         THE COURT:  Okay.

23         MR. DIAMONDSTEIN: Judge, there is some information

24    and I discussed with the government earlier that there is some

25    information that we can provide to the Court.  However, it

1    would have to be because it's concerning Mr. Williams ability

2    to pay and some of our agreements.  It would have to be ex-

3    parte on sealed record.  But I could provide that information

4    to the Court.  I just can't do it on an open record.

5              THE COURT:  Well I mean I'm not inclined to seal

6    anything since there is a public right of access to the

7    courtrooms in these proceeding.

8              MR. DIAMONDSTEIN:  Then I can't discuss with the

9    Court the discussions that we've had.  I can tell the Court

10   that I've spoken with counsel that Mr. Williams is referring

11   to.  They advised me that by Friday they should have an answer.

12             THE COURT:  Okay.  And is Mr. Williams has the

13   ability to pay?  Does he have the ability to afford another

14   lawyer?

15             MR. WILLIAMS:  Yes.

16             THE COURT:  Do you sir, Mr. Williams?

17             MR. WILLIAMS:  Yes, Your Honor.

18             THE COURT:  You have the ability to afford counsel?

19             MR. WILLIAMS:  Yes, Your Honor.

20             THE COURT:  All right.

21             MR. WILLIAMS:  The individuals I have spoken with--

22   may I say it?

23             THE COURT:  Yeah, sure.

24             MR. WILLIAMS:  Well many individuals, Your Honor.

25   Some I cannot afford of course.  But I have spoken with some

1   individuals that I believe are going to enter their appearance

2   on Friday, Your Honor.  That I can afford and will retain their

3   services.

4          THE COURT:  And they understand that in this Court,

5   there is no such thing as a limit appearance?

6          MR. WILLIAMS:  Yes, Your Honor.

7          THE COURT:  And they're going to be in for the entire

8   case.

9          MR. WILLIAMS:  That's correct, Your Honor.

10          THE COURT:  So it doesn't appear--you can be seated.

11   I'm sorry.  Mr. Diamondstein, it doesn't appear as I have seen

12   the law and I have read the local rule, that there's any such

13   thing as a limited appearance.

14          MR. DIAMONDSTEIN:  Judge, I understand the issue that

15   the Court raises.  The problem that we have in this case, quite

16   frankly, and the government could attest to this is that Mr.

17   Williams is under a great time constraint.  When I spoke with

18   Mr. Williams and I won't get into specifics, there was very

19   little time for me to ascertain whether or not I could

20   represent Mr. Williams, due to both the cost of the case such

21   as this which on late on Monday evening I would have no idea to

22   speculate what that would be.  Also, there are significant

23   ethical issues that I as a criminal practitioner face when

24   representing the sitting district attorney.  For that reason--

25          THE COURT: [Interposing] I don't understand that.  I

1   don't understand the ethical issues that you cited.

2          MR. DIAMONDSTEIN:  Well there is a number of them if

3   I may.  I have spoken to Judge Tucker, who is a supervising

4   judge of the criminal courts in Philadelphia.  I have spoken to

5   a number of common pleas judges.  There's a number of ethical

6   issues.  If the Court wants me to put them on record, I will.

7   I would rather not.  But I'm waiting to get ethics counsel to

8   offer me an opinion.  Part of the problem with me getting

9   ethics counsel is I haven't been retained to do so.  Putting me

10  in a position to pay out of my own pocket for a representation

11  for Mr. Williams which is not something that I would be willing

12  to do.  And again, sort of moving backwards, when I spoke to

13  Mr. Zauzmer on I guess it was Tuesday morning, and I let him

14  know that A, I had ethical concerns.  Because the problem is

15  that as long as Mr. Williams is a sitting district attorney,

16  his name is on every bill of information.  His name is on every

17  complaint that is filed in.

18          THE COURT:  He's not a party.  He is representing the

19  Commonwealth.  This is a lawyer issue, not a client issue.

20          MR. DIAMONDSTEIN:  But if he's prosecuting my clients

21  in Philadelphia County, that is a conflict of interest.  And I

22  have raised that with some ethics counsel who have advised me

23  of the same.  Some ethic attorneys that I have spoken to say it

24  is a waivable conflict.  Some say it isn't.  And the reason

25  that I would say some say it isn't is for example, I'm very

1    well respected in the Philadelphia Court system.  There are

2    individuals in the Philadelphia Court system, prosecutors that

3    I can go to.  I can speak to.  I can get deals for.  The

4    concern is while some of my clients can waive the conflict if

5    I'm representing a sitting district attorney, the problem that

6    I have is the un-waivable conflict of how I would be treated by

7    other prosecutors, especially chiefs knowing that I'm

8    representing the district attorney.  I don't know that I would

9    have the same effectiveness for those lawyers.  So, that is one

10   issue.  And quite frankly--

11              THE COURT: [Interposing] Well that--is Judge Diamond

12   dismissed that as frivolous.

13              MR. DIAMONDSTEIN:  And quite frankly, I'm not here to

14   challenge what Judge Diamond did.  I never filed anything with

15   Judge Diamond.  After our hearing and in front of Judge

16   Diamond, I was approached by the Judge's Deputy.  I advised the

17   Judge's Deputy that I had some issues.  The Judge Deputy

18   advised me to write a letter to the judge with those.

19              THE COURT:  Well I don't think it's productive for us

20   to get into a debate over what a deputy clerk advised you.

21              MR. DIAMONDSTEIN:  Yes, sir.

22              THE COURT:  My view is this is just because you

23   represent the district attorney doesn't mean that there is a

24   conflict with all of the clients you represent.  And to the

25   extent there might be, it's waived.  I mean we have had waivers

1    in this Court as you know where the defendant was charged by

2    the US Attorney's Office.

3               MR. DIAMONDSTEIN:  Sure, I can understand that.  I'm

4    only telling the Court what I've been advised by a number of

5    common plea judges.

6               THE COURT:  Well in case you forgot, you're not

7    there.

8               MR. DIAMONDSTEIN:  No, I understand that.  But the

9    rest of my practice is sir.  I've got 50 or 60 other…

10              THE COURT:  Well but you made the decision to

11   represent Mr. Williams.  This is a significant case.  He faces

12   significant criminal exposure based on the allegations in the

13   indictment.

14              MR. DIAMONDSTEIN:  True.

15              THE COURT:  You made that decision with open eyes and

16   so did he.

17              MR. DIAMONDSTEIN:  Actually no sir.  And that is the

18   reason again, I respect this Court.  I respect Judge Diamond.

19   I had conversations at length for Mr. Zauzmer.  And let him

20   know, I am not in a position to enter a full appearance in this

21   case for all of these ethical issues.  My office had give or

22   take 24 hours to address all of these issues.  And in speaking

23   to the government, it was the government's position as far as I

24   saw it that they were okay with the limited appearance because

25   the case needed to move forward.  Otherwise, Mr. Williams was

1    going to come to Court without an attorney.

2              THE COURT:  It happens every day.

3              MR. DIAMONDSTEIN:  It does.  And as far as we knew,

4    Mr. Williams wasn't in a position to request CJA counsel.  And

5    so…

6              THE COURT:  Let me ask you a question.

7              MR. DIAMONDSTEIN:  Yes, sir.

8              THE COURT:  How long is Mr. Williams, and maybe he

9    can answer that.  How long has he known he's been under

10   investigation?

11             MR. DIAMONDSTEIN:  For a long period of time.

12             THE COURT:  Then how could it possibly be that the

13   indictment came as a surprise and he had made no provision to

14   secure a retained lawyer, if that's what he wanted?

15             MR. DIAMONDSTEIN:  The way that I could answer that

16   question is this.  My understanding is that there were

17   discussions between Mr. Peace and the government.  The

18   government gave Mr. Peace a hard time on.  That timeline was

19   rejected.  Sometime on Monday of last week.  And Mr. Williams

20   was advised you're going to be indicted tomorrow.  So, he had

21   24 hours notice.  And again, I can't speak as to why that Mr.

22   Williams didn't have another attorney.  I don't know whether if

23   Mr. Williams knew that the timeline was going to hit that hard.

24   And even if the Court says Diamondstein I'm not buying the

25   conflict.  And respectfully that's this Court's position or

1  Judge Diamond's position. What I can tell the Court is I can't

2  close down my practice to handle a case with 80,000 pages of

3  documents, 300,000 emails for no money.  I can't do it.

4         THE COURT:  Well that's a decision that you should

5  have made last week.  Because when you signed on represent Mr.

6  Williams, according to the local rules at every reported case

7  I've read, you signed on for the entire case.  Now what's your

8  legal authority for that position?  Because I haven't found

9  any.

10        MR. DIAMONDSTEIN:  The only authority I can cite is

11  the case of Judge--of United States versus Herring.  And the

12  only other thing I can say--

13        THE COURT: [Interposing] Herring goes to the exact

14  opposite way.

15        MR. DIAMONDSTEIN:  It does.  But there was reasons

16  why Herring went the opposite way.  Herring went the opposite

17  way because that was a case where individuals were in the case

18  literally for six months, I think it was.  They had been

19  representing the defendant for two years beforehand.  He was

20  represented by one law firm.  A second law firm entered into

21  the case.  And the second law firm then represented for four or

22  five months.  And then when they were short of trial, after

23  both individuals had been paid, both law firms decided to pull

24  out.  And so there is only so many things I can say on the

25  record in front of the press.  And what I'm telling the Court

1    is that there are issues that should be addressed with this

2    Court ex parte regarding Mr. Williams ability to pay.  What I

3    have quoted him as a fee and what Mr. Williams has so far paid

4    me.  And so I--

5              THE COURT:  [Interposing] Well if Mr. Williams has an

6    inability to afford counsel, I have a CJA affidavit here where

7    he can seek appointed counsel.  And I'll question him on it

8    now.  If that's what he wants.  Is that what you want Mr.

9    Williams?

10             MR. WILLIAMS:  No, Your Honor.

11             THE COURT:  All right.  So why are you saying that?

12   I don't understand it.

13             MR. WILLIAMS:  Why am I saying that?

14             THE COURT:  Why are you saying he can't afford to pay

15   counsel when he doesn't want a Court appointed counsel?

16             MR. DIAMONDSTEIN:  What I'm suggesting and again, I

17   can't tell the Court what I've quoted him as a fee.  I can't.

18   And I don't want to open the record.

19             THE COURT:  I don't even want to know that.

20             MR. DIAMONDSTEIN:  Mr. Williams has not been able to

21   pay my fee.  That's the best I can tell you.

22             THE COURT:  Well you've already been retained to

23   represent him.

24             MR. DIAMONDSTEIN:  I have received zero dollars and

25   zero cents.

1              THE COURT:  That's immaterial.  You entered your

2    appearance as his lawyer.  As of now, who is your lawyer, Mr.

3    Williams?  As of today, right now.  3:15.

4              MR. WILLIAMS:   Yes, Your Honor, I thought Mr.

5    Diamondstein was entering just for my arraignment, Your Honor.

6              THE COURT:  Who is your lawyer right now as we here?

7              MR. WILLIAMS:  Mr. Diamondstein, Your Honor.

8              THE COURT:  You're the lawyer on the case.

9              MR. DIAMONDSTEIN:  I understand, Judge.

10             THE COURT:  You signed on for the case.  Your client

11   faces serious criminal exposure.  You want to walk away from

12   that?

13             MR. DIAMONDSTEIN:  Absolutely not.  Absolutely not.

14             THE COURT:  All right.  Then what are you asking me

15   to do?

16             MR. DIAMONDSTEIN:  I'm asking the Court to allow me

17   to be removed as counsel.  And if the Court doesn't do that,

18   give us till Friday as I think that there may be another lawyer

19   that appears on Friday.  But what I'm telling the Court is I

20   have been a lawyer for 21 years.  I was a prosecutor first and

21   I think I've been a defense attorney for about 17 years.  Every

22   single person I've ever represented in state and federal court,

23   has received effective assistance to counsel.  And I'd like to

24   say, I'd like to take a hold of that.

25             THE COURT:  Why--hold on.  Why are you making a

1  speech that has nothing to do with the question?

2         MR. DIAMONDSTEIN:  Because what I'm suggesting to the

3  Court is if this Court where Judge Diamond holds me in this

4  case, I cannot represent Mr. Williams effectively without being

5  retained.

6         THE COURT:  Of course you can.  I have seen you

7  represent clients effectively and you can do a more than

8  capable job.  And you know that.

9         MR. DIAMONDSTEIN:  Not with 80,000 documents, 300,000

10 emails without being paid.  I cannot do it.

11        THE COURT:  Well that is something you should have

12 thought about last week.  I don't know why you took this step.

13 Mr. Williams could have been like any other defendant.  He

14 could have come to Court and said I haven't had time to retain

15 a lawyer yet.  I need a couple more days and we routinely grant

16 that.  You and Mr. Williams know that.  The government knows

17 that.  There was no urgency to have everything done last

18 Tuesday or Wednesday, whatever it was.  He could have asked for

19 time to hire a lawyer.  And judges give that every day in this

20 courthouse.  You know that.

21        MR. DIAMONDSTEIN:  And I was respectfully suggesting

22 to the Court, there is no harm at this point, there is no

23 prejudice to the Court.  There is no prejudice to the

24 government.  And simply to hold me in because I attempted to do

25 a favor for the government and Mr. Williams is patently

1  inappropriate.  I don't know what my office is going to do to

2  come up with the funds to defend Mr. Williams.  Just because

3  the Court says you have to do it.  And I'll do whatever the

4  Court tells me to do.

5          THE COURT:  You didn't think about this at all before

6  this possibility?

7          MR. DIAMONDSTEIN:  No, because absolutely not sir.

8  Because to me, this gentleman's word it means 100% to me.  And

9  Judge Lloret knew that I was having a limited appearance and

10  accepted it.

11          THE COURT:  Judge Lloret didn't accept anything.

12  Judge Lloret said I understand.  Which is the same thing Judge

13  Strawberg said in Herring case.

14          MR. DIAMONDSTEIN:  And it was my understanding from

15  knowing Judge Lloret for many years that if Judge Lloret had a

16  problem with the limited appearance, he would have told me so

17  and I would have turned around and walked out of the Courtroom.

18  Which is what I advised the government.

19          THE COURT:  Well when you were admitted to this Court

20  in May 5th, 2000, you agreed--Scott DeClaudio sponsored you. Do

21  you remember that?

22          MR. DIAMONDSTEIN:  Yes, sir.

23          THE COURT:  In front of Judge Dalzell.

24          MR. DIAMONDSTEIN:  Yes, sir.

25          THE COURT:  You agreed to conduct yourself according

1   to the law.  The law in this Court is when you enter your

2   appearance, you're in for the entire case.

3                MR. DIAMONDSTEIN:  I understand that.

4                THE COURT:  You had to have known that.

5                MR. DIAMONDSTEIN:  Of course Judge.  But I also

6   understand that when clients don't have the ability to retain

7   me, lawyers routinely, routinely come to judges, they advise

8   the judge of the same.  And again, I'm going to ask the Court

9   again to allow me to put on the record what my fee structure

10  is.  And allow Mr. Williams to answer whether he can pay that

11  fee structure.

12               THE COURT:  You can put anything you want on the

13  record.

14               MR. DIAMONDSTEIN:  I can't put it in open record in

15  Court, Your Honor, knows that.  It has to be a sealed record.

16  It has to be a--

17               THE COURT: [Interposing] Why is that fee agreements

18  are privileged.

19               MR. DIAMONDSTEIN:  Absolutely.

20               THE COURT:  Fees are not privileged.

21               MR. DIAMONDSTEIN:  Absolutely they are.

22               THE COURT:  That's not privileged.  The law in this

23  circuit is they're not privileged at all.

24               MR. DIAMONDSTEIN:  The government has no right to

25  know what Mr. Williams is paying me or not paying me.

1              THE COURT:  It's not privileged.

2              MR. DIAMONDSTEIN:  Then I can't do it, Judge.

3              THE COURT:  Okay.

4              MR. DIAMONDSTEIN:  I can't put it on the record.

5              THE COURT:  You don't have to do anything you don't

6    want to do.  I'm not trying to take you do anything.  I'm just

7    telling you that I have found no law that allows for you to

8    withdraw your appearance.

9              MR. DIAMONDSTEIN:  And what I'm telling the Court,

10   because I don't know where this goes from here, whether I have

11   to go--because if these attorneys don't enter on Friday, my

12   next step is to appeal to the Third Circuit because I'm telling

13   the Court both ethically whether this federal court says that I

14   don't have a conflict, common plea court judges are telling me

15   otherwise.  And until I have an opinion from the disciplinary

16   board telling me that I can move forward, I cannot do that.

17   Because it's not an excuse for me to say to the disciplinary

18   board in Pennsylvania, a federal magistrate judge told me it

19   was okay or a federal district court judge told me it was okay.

20   Because Court of Common plea judges are telling me it's not

21   okay.  And so, my next step, again, because the nature of the

22   way this case happened and as quickly as it happened, I didn't

23   have the opportunity to get an opinion from an ethics lawyer.

24   And that's why I filed this motion.  That's why I made it clear

25   to the government.  And I made it clear on the record what my

1    position is.  And that's all I can tell the Court.

2            THE COURT:  Well I mean you've placed your client in

3    a difficult position by doing this.  Because he's facing

4    serious criminal charges.  There's significant public interest

5    in a speedy resolution of the case.  Given that he's the

6    sitting district attorney.

7            MR. DIAMONDSTEIN:  Yes, sir.  And the government--I

8    don't know if the Court is aware of this.  The government has

9    already filed a motion making this case complex.  So, I have no

10   idea--

11           THE COURT: [Interposing] Well they filed a motion.

12           MR. DIAMONDSTEIN:  Yes, sir.

13           THE COURT:  Judge Diamond hasn't granted it.

14           MR. DIAMONDSTEIN:  That's correct.

15           THE COURT:  So, whether they assert cases are complex

16   all the time.  And sometimes they're granted, sometimes they're

17   not.  It's a 23-count indictment.

18           MR. DIAMONDSTEIN:  I understand.  Say that again sir?

19           THE COURT:  It's a 23-count indictment.

20           MR. DIAMONDSTEIN:  That's correct.

21           THE COURT:  With fairly straightforward allegations.

22           MR. DIAMONDSTEIN:  With 80,000 documents and 300,000

23   emails.

24           THE COURT:  You're a good lawyer.

25           MR. DIAMONDSTEIN:  I'd like to think I'm a great

1  lawyer but thank you.

2            THE COURT:  Well we'll leave that for others to

3  determine.

4            MR. DIAMONDSTEIN:  Yes, sir.

5            THE COURT:  But you signed on to do the case.  So, I

6  don't have any basis as I see it right now to recommend to

7  Judge Diamond that you should be allowed to withdraw.

8            MR. DIAMONDSTEIN:  I'm only telling the Court that my

9  client has no funds for his attorney and no funds for

10 investigation.  If the Court doesn't think that's enough, then

11 so be it.  I guess the appellate courts will tell us that's

12 okay or not.

13           THE COURT:  If Mr. Williams tell me right now that he

14 has no funds to pay an attorney, I will have him answer

15 questions under oath about his finances.  And if necessary, the

16 Court will appoint a very good lawyer for him.  The lawyers on

17 our court appointment list are some of the best in the city.

18 You know that.

19           MR. DIAMONDSTEIN:  I do.

20           THE COURT:  So, I'm perfectly prepared right now to

21 do the form with him and find out if he has the resources to

22 hire counsel.  He has told me he doesn't want to do that.  So

23 why do you keep telling me he doesn't have money when he's

24 telling me that he's going to pay another lawyer by Friday?

25           MR. DIAMONDSTEIN:  I don't know that that's exactly

1   what he said.

2           THE COURT:  All right.  Well let's ask him.  Mr.

3   Williams, what did you say?

4           MR. WILLIAMS:  Your Honor, I said I will have other

5   counsel enter their appearance on Friday.

6           THE COURT:  Okay.  And are you going to retain those

7   people, those lawyers?

8           MR. WILLIAMS:  Yes, Your Honor.  Yes.

9           THE COURT:  For that lawyer?

10          MR. WILLIAMS:  Yes.

11          THE COURT:  Okay.  So, you have the funds to do that?

12          MR. WILLIAMS:  Yes.

13          MR. DIAMONDSTEIN: Okay.

14          THE COURT:  So why do you keep telling me he doesn't

15   have funds for a lawyer?

16          MR. DIAMONDSTEIN:  Judge, I guess I was mistaken

17   then.

18          THE COURT:  Okay.  All right.  So, the way we're

19   going to leave it apparently is that by Friday, you're going to

20   advise me or Judge Diamond who your new lawyer is.

21          MR. WILLIAMS:  Yes, Your Honor.

22          THE COURT:  In the meantime, I'll take your motion

23   under advisement.

24          MR. DIAMONDSTEIN:  Yes, sir.

25          THE COURT:  I think it's highly unlikely that I could

1    ever recommend that Judge Diamond grant it knowing the law.

2    There's a Third Circuit case right on point, Asatero

3    [phonetic], where the Court forced local counsel who had

4    entered their appearances, local counsel mid-trial in a

5    criminal case to take over that criminal case.  There is no

6    precedent to allow someone to enter a limited appearance.  I

7    don't know whether that's how it's done in other courts.  But

8    it's not done that way here.  Mr. Zauzmer, you want to say

9    something?

10             MR. ZAUZMER:  Well I guess I should just to make the

11   record complete.  With regard to the factual statements that

12   Mr. Diamondstein has made, to the extent of our knowledge they

13   are correct.  We did have conversations that Monday night and

14   Tuesday morning of which he told me that he wanted to enter a

15   limited appearance.  I told him that the government had no

16   objection.  And also said that I can't control what the Court

17   does.  And he said he certainly understood that.  With respect

18   to our position, our position is that we do not have an

19   objection.  Your Honor's, statement of the law of course is

20   absolutely correct.  That the Court can require someone who

21   enters an appearance to stay for the case.  But in addition, as

22   I know, Your Honor, is aware, a Court always has discretion to

23   permit a lawyer to withdraw.  And it was in that sense that I

24   was thinking when I spoke to Mr. Diamondstein and we spoke of

25   the risk that he was undertaking at that time.  the

1  government's position in cases like this as I think you also

2  know has always been consistent.  Which is the government at

3  this early stage will ordinarily state no objection when it

4  comes to matters of a defendant selecting his counsel.  Where

5  the government states an objection, and asks the Court not to

6  exercise its discretion to let a lawyer withdraw is much later

7  in the case.  Particularly where a defendant wants to change

8  counsel and it appears to be an effort to delay or otherwise

9  thwart the proceedings.  So, it's very common at a later stage

10  that the government objects.  It's very uncommon that we would

11  object at this early stage.  And we do not object.

12          THE COURT:  How about in giving the fact that Mr.

13  Williams is the Chief Prosecutor for county in Philadelphia?

14  That changing counsel even at a relatively early stage is going

15  to delay the administration of justice.  If he's found not

16  guilty, the taxpayers should know that.  If he's found guilty,

17  they should know that.  Sooner rather than later, shouldn't

18  they?

19          MR. ZAUZMER:  Yes, sir.  And what has been said here

20  and what's been said to me over the past week is that this is

21  going to be resolved in a matter of days, as opposed to a

22  matter of weeks or months.  And we were content to let that

23  happen, that he has the counsel he wants.  But we are nearing

24  the end of that reasonable period as I think, Your Honor,

25  recognizes.

1            THE COURT:  Okay.  Thank you.

2            MR. DIAMONDSTEIN:  And Judge just one thing--

3            THE COURT: [Interposing] Yeah, I'm sorry.

4            MR. DIAMONDSTEIN:  Along that vein.

5            THE COURT:  Yeah.

6            MR. DIAMONDSTEIN: I have no discovery on this case.

7   I mean so it's not like I prepared in this case for months and

8   I'm ready to go.

9            THE COURT:  If you want discovery, I'll get you

10  discovery today.

11           MR. DIAMONDSTEIN:  No, Judge.  And again, my position

12  is the same as it was before.  Ethically I can't do this case

13  under the circumstances that I have.  And if the Court

14  disagrees--

15           THE COURT: [Interposing] All right.  Well I think--

16  no.  I just want to talk to Mr. Williams again.  You can be

17  seated.

18           MR. DIAMONDSTEIN:  Yes, sir.

19           THE COURT:  I'm sorry, Mr. Diamondstein.  If you're

20  representing to me which I believe you have that you're going

21  to have a lawyer retained by Friday.  Make sure that that

22  happens.  Because there is also a law on this circuit that if

23  there is intentional efforts to delay the proceedings by hiring

24  and firing counsel, two things could happen.  You could waive

25  your right to counsel.  And you could have your bail revoked.

 1  So, I would be very careful with how you proceed here.  Because
 2  if you hire somebody Friday and then they come in and try to do
 3  what Mr. Diamondstein is doing now, that could be a big problem
 4  for you.  And I just want you to make sure you're aware that
 5  this is treacherous area you're in.  So, if you've got the
 6  ability to pay a lawyer, and you're going to hire that lawyer
 7  Friday, there is not going to be anymore replacements of
 8  counsel based on inability to pay or something like that.
 9          MR. WILLIAMS:  Yes, Your Honor.  No disrespect was
10  meant to this honorable court or to Mr. Diamondstein for his
11  attempt just to help an old friend.  I'm sorry for
12  inconvenience to the Court, Your Honor.
13          THE COURT:  You're not inconveniencing me.  I mean,
14  it's a very significant time in our city's history when the
15  chief prosecutor is charged by the federal government.  And I
16  just want to make sure that the issue of counsel is resolved
17  sooner rather than later.  So, this doesn't drag on
18  unnecessarily.
19          MR. WILLIAMS:  Understood, Your Honor.
20          THE COURT:  So, I'll advise Judge Diamond that I'm
21  going to take this under advisement till Friday till I hear
22  from--who is going to contact me?  Mr. Diamondstein?
23          MR. DIAMONDSTEIN:  Your Honor, I have been in contact
24  with these attorneys.  I will advise them that they should
25  enter an appearance.  They can do it electronically.  May I ask

1  if another attorney enters their appearance that this Court

2  will issue an order allowing me to withdraw as counsel?

3          THE COURT:  That decision is ultimately going to be

4  with Judge Diamond.  But if Mr. Williams dismisses you and

5  hires a new lawyer, I don't see how that could be a problem.

6          MR. DIAMONDSTEIN:  Very well.  I'll make sure that I

7  speak to the lawyers today and I'll let them know that time is

8  of the essence.  And maybe they'll even be able to enter their

9  appearance earlier than that.

10          THE COURT:  And do these people you're talking to

11  understand that they're--I'm talking to Mr. Williams now, I'm

12  sorry.  Do they understand that there is no guarantee that if

13  your finances change that the Court is going to appoint them to

14  represent you?

15          MR. WILLIAMS:  Yes, Your Honor.

16          THE COURT:  All right.  So, you're representing to me

17  that you have the ability to retain them and keep them in the

18  case through verdict?

19          MR. WILLIAMS:  May I have a second please?

20          THE COURT:  Yes.

21          MR. WILLIAMS:  Your Honor, thank you.

22          THE COURT:  Sure.

23          MR. WILLIAMS:  Can the Court ask the question again?

24          THE COURT:  Yeah, my question was are you

25  representing to me that you have the funds to hire a lawyer and

1    retain them and pay them to represent you through verdict in

2    the case?

3         MR. WILLIAMS:  Your Honor, it's my understanding,

4    yes.  I will retain them.  And it's my understanding they're

5    going to remain through to verdict.

6         THE COURT:  Okay.  Even if your situation changes and

7    you're unable to pay their bill, do they understand that

8    they're not going to be let out of the case?  It's not a

9    limited appearance.

10        MR. WILLIAMS:  That is my understanding of their

11   understanding of the Court's rules, Your Honor.

12        THE COURT:  Right, this is in for the whole thing.  I

13   think what would be advisable, Mr. Diamondstein, is if Mr.

14   Williams does hire a new lawyer, that they do it formally.

15   They enter their appearance formally so I can question them on

16   this and make sure they understand they're not going to be let

17   out.

18        MR. DIAMONDSTEIN:  May I respectfully suggest the

19   Court that we list this matter sometime on Friday in front of,

20   Your Honor?

21        THE COURT:  Yes.  What time is good for you?  Well I

22   guess it's what time is good for the people you're going to be

23   hiring?  Because they're going to have to come.  You can--I'm

24   pretty flexible so you can tell me Thursday what time works for

25   everyone.

1             MR. DIAMONDSTEIN:  Can I just check my calendar sir?

2  Did you say Thursday?

3             THE COURT:  Friday is fine.

4             MR. DIAMONDSTEIN:  Yeah.

5             THE COURT:  Are you going to have a decision by

6  Friday during the day, Mr. Williams?

7             MR. WILLIAMS:  Yes, Your Honor.

8             THE COURT:  All right.  So, let's plan on Friday.  If

9  you want to dismiss Mr. Diamondstein and hire a new, retain a

10 new lawyer, we can do it Friday.  And I want to make sure they

11 understand it, inability to pay is not going to let them out of

12 the case.

13            MR. WILLIAMS:  Yes, Your Honor.

14            THE COURT:  So you'll let me know Thursday what time

15 they want to come down to do that?

16            MR. DIAMONDSTEIN:  Yes, sir.

17            THE COURT:  Now, if that doesn't happen, if you don't

18 retain counsel on Friday, where do we go then?

19            MR. DIAMONDSTEIN:  Judge, if we don't--if counsel

20 isn't retained by Friday, I would most respectfully suggest

21 that we should come back in front of, Your Honor, and Mr.

22 Williams needs to be colloquy on his ability to pay.

23            THE COURT:  All right.

24            MR. DIAMONDSTEIN:  I don't believe that I have made

25 any incorrect representations to this Court if Mr. Williams has

1  other arrangements with other attorneys, so be it.  But I

2  believe every representation I made is spot on.

3           THE COURT:  Should we just schedule it for Friday at

4  2:00?

5           MR. DIAMONDSTEIN:  Sure.

6           THE COURT:  Does that work for you Mr. Williams?

7           MR. WILLIAMS:  Yes, Your Honor.

8           THE COURT:  Mr. Zauzmer?

9           MR. ZAUZMER:  Yes, sir.

10           THE COURT:  All right.  Let's do it Friday at 2:00.

11  We'll do it in this courtroom.  Either for an entry of

12  appearance by the new retain lawyer or to discuss whether Mr.

13  Williams qualifies to have counsel appointed.

14           MR. DIAMONDSTEIN:  Yes, sir.

15           THE COURT:  Anything further from the government?

16           MR. ZAUZMER:  No, Your Honor.  Thank you.

17           THE COURT:  Anything further Mr. Diamondstein?

18           MR. DIAMONDSTEIN:  No, sir.

19           THE COURT:  Mr. Williams?

20           MR. WILLIAMS:  No, Your Honor.

21           THE COURT:  All right.  I want to thank everybody for

22  making yourself available.  I appreciate everyone's candor and

23  patience and professionalism and have a good day.

24           MR. DIAMONDSTEIN:  Thank you sir.

25           MR. ZAUZMER:  Thank you, Your Honor.

1

HEARING

* * * * *

**C E R T I F I C A T I O N**

        I, Lynn M. Reinhardt, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of our ability.

_____

Lynn M. Reinhardt

       DATE:  April 11, 2017