IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES** | : | **CR#17-137** |
| | : | |
| **v.** | : | |
| | : | |
| **RUFUS SETH WILLIAMS** | : | |

**RUFUS SETH WILLIAMS' RESPONSE TO THE GOVERNMENT'S NOTICE OF EVIDENCE OF OTHER ACTS PURSUANT TO FED. R. EVID. 404(B)**

## I. INTRODUCTION

Rufus Seth Williams ("Williams") has been charged by a grand jury sitting in the Eastern District of Pennsylvania with violations of the Travel Act Contrary to Pennsylvania Law, Hobbs Act Extortion, Honest Services Fraud, Wire and Mail Fraud. The government filed the Government's Motion To Admit Evince Pursuant To Federal Rule of Evidence 404(b) on June 19, 2017. In that motion, the government seeks to introduce evidence of other acts the government believes are relevant to prove Williams' knowledge with respect to the charged offenses. Specifically, the government seeks to introduce this evidence to prove the bribery allegations, PAC Fraud and Vehicle Fraud allegations.

Federal Rule of Evidence 404 provides, in relevant part:

> **(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident...**

The purpose of Rule 404(b) is to protect an accused's constitutional right to a fair trial from the tendency that bad character evidence will weigh too much with the jury and to so over-persuade them as to prejudge one with a bad general record and deny him a fair opportunity to

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

defend against a particular charge. United States v. Sampson, 980 F.2d 883, 886 (3d Cir.1992)(quoting Michelson v. United States, 335 U.S. 469, 475-76 (1948))

The Third Circuit has adopted the United States Supreme Court's four-prong test to determine whether evidence of the other crimes, wrongs or acts allegedly committed by a charged defendant are admissible under the Federal Rule of Evidence 404(b). See, Huddleston v. United States, 485 U.S. 681 (1988); United States v. Scarfo, 850 F.2d 1015 (3d Cir. 1988), cert. denied, 488 U.S. 910 (1988). According to the Huddleston test, evidence of prior bad acts (1) must have a proper purpose under Rule 404(b); (2) it must be relevant under Federal Rule of Evidence 402; (3) its probative value must outweigh its potential to unfairly prejudice the defendant under Federal Rule of Evidence 403; and, (4) the court must instruct the jury to consider the prior bad acts evidence for its limited proper purpose only. Scarfo, 850 F.2d at 1019 (citing Huddleston, 485 U.S. at 691-92). Because the government's proffered evidence is not relevant and would unfairly prejudice Williams, the government's motion should be denied.

## II. ARGUMENT

### A. Bribery Allegations

The superseding indictment alleges that on or about May 2010 to on or about May 2015, Williams participated in an alleged bribery scheme with Business Owner #1 wherein Business Owner #1 provided Williams with benefits in exchange for official action. Those benefits included a tie, an iPad, an all-expense paid trip to Punta Cana, a sofa, a dinner, a purse and a watch, $2000 in cash and a $7000 check. (Counts 1-6 and 14 to 15). The superseding indictment also alleges that in or about March 2012 to in or about July 2015, Williams participated in an alleged bribery scheme with Business Owner #2 wherein Business Owner #2 provided Williams with benefits in exchange for official action. Those benefits included a pre-

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

owned Jaguar XK8, insurance premium payments, cash payments, airline tickets and lodging on trips to California, Florida, and Nevada. (Counts 7-15).

The government now alleges that in order to conceal Williams' unlawful arrangements with Business Owners #1 and #2, Williams intentionally omitted reference to these benefits in his City and State Statements of Financial Interest ("SFIs") for the relevant years those benefits were received. In 2016 however, well after the federal law enforcement investigation had become known to him, Williams filed amended SFIs that reflected the above- mentioned benefits minus the receipt of the pre-owned 1997 Jaguar XK8 and insurance premiums from Business Owner #2.

In order to prove these bribery allegations, the government seeks to introduce statements Williams made regarding the prosecution of Thomasine Tynes ("Tynes"), the then President Judge of the Philadelphia Traffic Court. Tynes received a Tiffany bracelet in exchange for attempting to influence the award of a lucrative contract. The government now seeks to introduce the following statements Williams made in reference to the prosecution of Tynes. Specifically;

- "This is a bracelet. It's a $2000 Tiffany charm bracelet. The bracelet Judge Tynes received for promising special access to a businessman who said he was seeking an exclusive and very lucrative government contract."

- "This is demonstrative, tangible evidence of the quid pro quo."

- "The citizens of the Commonwealth of Pennsylvania and the people of Philadelphia deserve nothing but honest and hardworking representation. They don't deserve elected officials who think that it is ok to sell their office….There are no free passes when it comes to corruption and the elected officials who break the law".

The government seeks to introduce these statements Williams made in reference to the prosecution of Tynes for bribery. In their motion, the government claims that this evidence is

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

not voluminous and "nearly identical conduct" and is being introduced to show "knowledge" and that Williams acted inconsistently with the rules he earlier enforced.

Even though the government alleges that the above evidence does not fall under 404(b), it remains irrelevant and should not be admitted. Federal Rule of Evidence 401 states that evidence is relevant if (a) it has a tendency to make a fact more or less probable than it would be without the evidence, and (b) the fact is of consequence in determining the action. Williams is charged with accepting gifts in exchange for official acts. The prosecution of Tynes is anything but identical to Williams' case, as the government claims. Tynes met with an informant whom she neither knew nor was friends with, and accepted a bracelet from him in direct exchange for influencing the award of a lucrative contract. There was direct evidence of a *quid pro quo* in that case. Here, the government does not have evidence of a direct *quid pro quo* from Williams, and hence their prosecution under the very loose "stream of benefits" theory. The case against Tynes could not stand in more direct contrast to Williams' case. Unlike the informant who bribed Tynes, Williams was long-time friends with both Business Person #1 and #2. There is no smoking gun in Williams' case – evidence of a direct *quid pro quo* as in the case against Tynes. Simply stated, Under FRE 401 (a), the introduction of this evidence does not tend to prove that Williams accepted gifts from his friends in exchange for official acts.

Regardless of its "brevity", the government seeks to introduce this evidence for one reason only, and that is to label Williams a hypocrite. The fact that the government seeks to show that he acted "inconsistently" proves that point. The government claims these statements are needed to show Williams' knowledge of Pennsylvania's Bribery Statute. This proffered purpose is pure pretext. Williams' prosecution of Tynes has no relevance here as not only do her actions stand in stark contrast to the instant allegations, Williams' "knowledge" of the elements of bribery is

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

irrelevant as lack of knowledge would not be a defense. Whether Williams' knows the elements of bribery does not tend to prove that he committed bribery in the instant case. Accordingly, this irrelevant and inflammatory evidence must be excluded.

The introduction of this evidence also violates Rule 403, and should not be permitted to into evidence.

Rule 403 holds

**"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."**

Federal Rule of Evidence 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by its propensity to unfairly prejudice the defendant, confuse the ultimate issues in controversy or otherwise mislead the jury, or impact other trial concerns. See, United States v. Van Horn, 277 F.3d 48, 57 (1st Cir. 2002); United States v. Brugman, 364 F.3d 613, 620 (5th Cir. 2004); United States v. Joseph, 310 F.3d 975, 978 (7th Cir. 2002); United States v. Mejia-Uribe, 75 F.3d 395 (8th Cir.1996), cert. denied, 519 U.S. 855 (1996); United States v. Spillone, 879 F.2d 514 (9th Cir.1989), cert. denied, 498 U.S. 878 (1990); United States v. Pollock, 926 F.2d 1044 (11th Cir. 1991), cert. denied, 502 U.S. 985 (1991).

The government's true intent of this evidence is to label Williams a hypocrite and draw the ire of the jury against him. Allowing the government to show a previous television clip of the District Attorney at a news conference discussing the prosecution of a public official for a case that has a clearly identifiable quid pro would be patently unfair, especially in light of the fact that the evidence in that case is grossly different then the evidence here, and would require

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

the defense to them attempt to highlight the differences between the cases to diffuse its prejudicial effect.

Indeed, proposed evidence of prior bad acts must possess probative value that is not substantially outweighed by unfair prejudice. See, e.g., United States v. Mastrangelo, 172 F.3d 288, 294-95 (3d Cir. 1999)(citing Huddleston, 485 U.S. at 691-92). Unfair prejudice arises when concededly relevant evidence... lure[s] the factfinder into declaring guilt on a ground different from proof specific to the offense charged. United States v. Ramos, 971 F.Supp. 186, 194 (E.D.Pa. 1997)(quoting Old Chief v. United States, 519 U.S. 172, 180 (1997)), aff'd, 151 F.3d 1027 (3d Cir. 1998). In determining whether the danger of unfair prejudice substantially outweighs the probative value of an item of evidence, "**we must assess the genuine need for the challenged evidence and balance that necessity against the risk that the information will influence the jury to convict on improper grounds**." United States v. Sriyuth, 98 F.3d 739, 747-48 (3d Cir. 1996), cert. denied, 519 U.S. 1141 (1997)(quoting Scarfo, 850 F.2d at 1019)(Emphasis added).

**B. PAC Fraud**

The superseding indictment further alleges that Williams committed a fraud against his PAC from in or about August 2010 to in or about August 2016, by using funds for personal expenditures in violation of the Commonwealth of Pennsylvania's Campaign Finance Reporting Law, P.L. 1333, No. 320, 25 P.S. § 3241 *et seq*., and the Pennsylvania Election Code, 4 P.S. § 177.1 which permit the expenditure of PAC funds only to influence the outcome of an election, and not for personal purposes. (Counts 22-25). Those laws also require a candidate to file

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

Campaign Finance Reports ("CFRs") that disclose the PAC's expenditures and receipt of contributions.

Specifically the government alleges that Williams violated these rules by, in part, taking approximately $4,036.59 from the PAC between August 2010 and September 2010, using a political consultant as a pass-through, and also by charging to the PAC numerous personal expenditures he incurred at a social club and at a health club between October 2011 and May 2015. The government further asserts that from in or about 2011 to in or about 2016, Williams caused to be prepared and filed with the City the PAC's annual CFRs, in which Williams concealed the fact he used PAC funds for his personal benefit.

In order to prove the PAC fraud allegations the government, in their motion, now seek to introduce Williams' alleged knowledge of campaign finance laws to show that Williams knowingly violated these laws. In order to prove Williams' alleged knowledge of these rules the government seeks to introduce Williams' own recorded testimony during a judicial hearing wherein the government claims shows Williams' knowledge of proper and improper PAC expenditures, as well as the disclosure requirements for SFIs. The government also plans on proving Williams' alleged knowledge of the applicable campaign finance laws through Aubrey Montgomery, the finance Director of the Friends of Seth Williams, a/k/a "The Committee to Elect Seth Williams".

**1. Williams' recorded testimony**

On March 20, 2009, and March 23, 2009, Williams testified in a judicial proceeding where a campaign rival sued to remove Williams from the ballot alleging Williams did not fully disclose PAC reimbursement checks as income on his SFI. The government now seeks to use this testimony as proof that Williams was intentionally using PAC money for his personal use in

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

violation of the campaign laws. In the government's motion, they mention in passing that the Commonwealth Court **ruled in favor of Williams and found no wrongdoing on his part.** *See In Re: Nominating Petition of R. Seth Williams*, 972 A.2d 32, 38 (Pa. Cmwlth. 2009).("…the Court's holding is that campaign expenses paid for initially by a candidate and then reimbursed to the candidate by his or her campaign committee do not fall within the definition of "Income" under Section 1102 of the Ethics Act required to be reported in the SFI under Section 1105(b)(5)."). Williams' testimony was in relation to disclosing reimbursement checks as income on his SFI, not regarding proper use of PAC funds, and its' introduction here to prove fraudulent expenditures distorts the true meaning of his testimony.

**2. Testimony of Aubrey Montgomery**

The government also seeks to introduce testimony of Aubrey Montgomery who was the finance director for the PAC from November 2008 through June of 2009. The government claims this evidence is necessary because "it is highly probative of his knowledge of the same rules that he allegedly violated in committing the PAC fraud charged in the indictment." She was responsible for filing CFR's and insuring compliance of all applicable campaign rules. According to the government, Montgomery ". . . soon observed that Williams used both the PAC's debit card as well as his personal debit card to pay PAC expenses. Williams then sought reimbursements for PAC expenses paid with his personal debit card." As seen above, Williams **was exonerated** by the Commonwealth Court of any wrongdoing in seeking reimbursements from the PAC. The fact that Montgomery may have instituted procedures for obtaining reimbursements from the PAC is of no moment. Williams' reimbursements were proper. Montgomery's opinion that reimbursements should be more strictly monitored is irrelevant.

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

While Montgomery may have felt stricter rules regarding reimbursements might have been proper, her opinion is irrelevant here as Williams did nothing wrong.

Furthermore, the type of testimony being offered in the person of Aubrey Montgomery is opinion testimony. In sum, her testimony points out what she believes are improper expenditures, but as a lay person, she can point to no authority in law or expertise as a foundation of that opinion. (In the memo the government cites in their motion, Montgomery wrote "I think is politically unwise to have the PAC . . . ". She does not say that it is illegal or a violation of any campaign finance laws) In fact, her opinion is wrong, especially in light of her belief that expenditures made by Williams to attend the Democratic National Committee and the Pennsylvania Society could not be further off-base. These events are purely political in nature raising the profiles of politicians and potential candidates and do not have to be connected to any "serious political and fund raising opportunities attached to these excursions."

The government is blatantly attempting to use this evidence to prove that since Williams was fined in 2009, he is also guilty here. However, the 2009 fine was not for improper expenditures in violation of Sect. 3241(d), but rather, the fine was because the campaign had double billed certain expenditures. Although the government doesn't think so, the difference is vast. The 2009 fine was for poor bookkeeping. The question here is not whether Williams made the charged expenditures, the question is whether those expenditures were proper under Section 3241(d), which allow expenditures for "the purpose of influencing the outcome of an election." Aubrey Montgomery's testimony does not shed light on that issue, and as such, should not be permitted. The bulk of this argument has been made in the defendant's motion to dismiss.

Even if this evidence were admissible under 404(b), it should still be excluded under Rule 403. As stated above, Rule 403 holds

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

**"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."**

Here, the government wishes to introduce evidence that Williams gave testimony in 2009 regarding his knowledge of what was to be included in his SFI's as it related to any income he received and from what sources. They also wish to introduce the opinions of Aubrey Montgomery to weigh in on what her thought were regarding expenditures made in the 2009 campaign. The levied fines in 2009 were for bookmaking errors, and not for some intentionally fraudulent activity by himself or the PAC, or for improper use of PAC funds. Oddly enough, the 2009 investigation never even raised the issue as to whether any campaign expenditures by Williams was a violation under Sect. 3241(d). Even if relevant, which it is not, this evidence should still be excluded under Rule 403 as its introduction will cause unfair prejudice and mislead the jury. A jury hearing about previous fines imposed for unrelated behavior will conclude that he must be guilty of the crimes charged here. In essence, the government wants to introduce this evidence to show that Williams had an unrelated ethical violation in 2009, and therefore he is guilty of doing it here. That is their true intent regardless of their claims of only introducing to show "knowledge".

**C. Vehicle Fraud**

Finally, the superseding indictment charges that Williams, from in or about December 2011 to in or about April 2017, used City and HIDTA vehicles under the false and fraudulent pretense that they were used only for a business purpose when in fact the vehicles were used for personal purposes. (Counts 26-29).

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

In order to prove these counts, the government now seeks to introduce evidence that while Inspector General of the City of Philadelphia he investigated and reported City employees who violated the city's vehicle use policy. The government further seeks to introduce evidence that Williams violated the policy set forth by Lynne Abraham ("Abraham"), Williams' predecessor, and HIDTA rules.

The City of Philadelphia has promulgated a Vehicle Use Policy pertaining to the use of City owned Vehicles. The Office of Managing Director, under Directive 64, lays out the policy and procedures for the use of city cars. Under Section 13 entitled "Take Home Vehicle Assignment and **Guidance**"(emphasis added), Sect 13.1 states, in pertinent part, "Take-Home vehicle assignments provide transportation for **employees** who are required to frequently respond to emergency situations". !3.2 states Assignments should be made on the basis of availability and departmental prioritization. There are numerous other options available to City **employees** for emergency after-hours transportation, such as use of a personal vehicle, or temporary vehicle assignment when on-call." Section 13.4 states "Departments are responsible for developing the Take Home assignment criteria. It must be submitted to the managing director for approval." Simply put, the policy applies to "employees" and makes no mention of elected officials. Whether by design or omission, the City has failed to enunciate a clear policy of car usage for **elected officials**.

Williams is not an employee of the City, he is an elected official. The government has failed to produce one policy, code section or ordinance that covers a "use policy" for elected officials. Introducing Williams' investigation into car misuse by **city employees** as Inspector General to prove his knowledge of the rules is sleight of hand. Again,. the government is attempting to make Williams look like a hypocrite, when in fact, he was acting

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

properly under the directives given to him by the city. Indeed, government can point to no instance in which Williams reprimanded or prosecuted an elected official for improper vehicle use while he was Inspector General. As such, his investigations into car misuse by **city employees** is not relevant under Rule 401(a) as evidence of previous prosecution of city employees by Williams does not tend to prove that he himself violated any city policy, especially since the government cannot point to any policy that covers "elected officials".

Moreover, Abraham's testimony is irrelevant in that any "policy" she may have implemented is not binding on a subsequent sitting District Attorney. The government has failed to point to any authority, statutory or otherwise, that supports their contention that Abraham's policy is binding on Williams. Furthermore, Abraham's policy applied to "personnel" of the office. Again, Seth Williams is an elected official, not office personnel. And, the government has produced no evidence that any policy she may have implemented was approved by the Managing Director's Office as required by Sect. 13.4. As such, her testimony is completely irrelevant.[1]

## III. <u>CONCLUSION</u>

The government seeks to introduce a variety of evidence not related to the charges here and should be precluded from doing so as the proffered evidence is not relevant, does not comport with Rule 404(b), is not relevant under Rule 401(a) and (b), or is not admissible under Rule 403. Accordingly, this Court should preclude its admission at trial.

Respectfully submitted,

[1] Ironically, former First Assistant Edward McCann ("McCann") told the FBI in his December 1, 2016 interview that he changed the PDOA policy in 2012 and eliminated take-home use. Since Williams was still being driven home by his Security Detail everyday with McCann's knowledge, it is clear that the policy change implemented by McCann did not apply to Williams. As such, even if this testimony was proper, which it is not, McCann would be the proper witness to testify what car-use policy was in place at the time of these alleged offenses, not Abraham.

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

***/s/ Thomas F. Burke, Esquire***

Counsel to R. Seth Williams

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

| | | |
|---|---|---|
| **UNITED STATES** | **:** | **CR#17-137** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **RUFUS SETH WILLIAMS** | **:** | |

**ORDER**

**AND NOW,** this _____________ day of June, 2017, upon consideration of the government's motion to admit other evidence under Rule 404(b), said Motion is DENIED.

BY THE COURT:

_______________________________

Hon. Paul S. Diamond

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

**CERTIFICATE OF SERVICE**

And now, on the **31st** day of **May, 2017**, **Thomas F. Burke, Esquire**, being duly sworn according to law, hereby certifies that a true and correct copy of the foregoing supplemental motion was served upon the following individuals:

**Clerk's Office**
**U.S. District Court for the Eastern District of Pennsylvania**
2609 U.S. Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106-1797
**VIA ECF**

**Honorable Paul S. Diamond**
**U.S. District Court for the Eastern District of Pennsylvania**
6613 U.S. Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106-1797
**VIA ECF**

**Vineet Gauri, Esquire**
**Eric Moran, Esquire**
**Assistant United States Attorney**
Eastern District of Pennsylvania
Suite 1250
615 Chestnut Street
Philadelphia, Pennsylvania 19106
**VIA ECF**

*/s/ Thomas F. Burke, Esquire*
**THOMAS F. BURKE, ESQUIRE**
**Attorney for Rufus Seth Williams**

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)