IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 17-137 |
| RUFUS SETH WILLIAMS | : | |

**GOVERNMENT'S SUPPLEMENT TO AND REPLY IN
SUPPORT OF MOTION TO ADMIT EVIDENCE
PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)**

The government moved pursuant to Federal Rule of Evidence 404(b) to admit at trial evidence that in 2008 and 2009, while successfully campaigning for the office of District Attorney for the City and County of Philadelphia, defendant Rufus Seth Williams was challenged and sanctioned for violating campaign finance and financial disclosure laws. In its motion, in an abundance of caution, the government also provided notice of relevant evidence it will offer regarding additional acts of the defendant outside those charged in the Superseding Indictment, but which is not subject to Rule 404(b) because the evidence cannot show bad character or propensity and instead provides ordinary evidence of knowledge. That evidence includes: (a) proof that, as the Inspector General of the City of Philadelphia between 2005 and 2008, Williams enforced against others the same rules regarding the use of City vehicles that he is charged in this case with violating for his personal benefit; and (b) proof that, as the District Attorney, he enforced against others the same state bribery law he is charged in this case with violating.

Williams filed a belated response to the motion,[1] to which the government now replies. Further, the government supplements its motion with a request to introduce other evidence, including evidence under Rule 404(b), that it has determined through recent trial preparation is appropriate to present.

## II. Reply in Support of Original Motion.

### A. Knowledge of Campaign Finance Laws.

The government seeks to offer evidence that proves Williams's knowledge, in 2008 and 2009, of the same prohibitions against personal use of campaign funds that he is charged in this case with violating a short time later.

In response, Williams emphasizes that in the earlier matter, he "was exonerated by the Commonwealth Court of any wrongdoing in seeking reimbursements from the PAC," Response at 8, and that a fine assessed against him by the Ethics Board "was not for improper expenditures [for personal expenses], but rather, the fine was because the campaign had double billed certain expenditures," Response at 9.

Williams appears to suggest that the evidence does not fall within Rule 404(b) at all, as it does not depict wrongdoing. The government does not accept that concession. Williams was sanctioned in relation to activities in which he commingled personal and campaign expenditures and did not properly report expenditures. But the government is not asserting that, because these events occurred, it must mean that Williams committed

---

[1] Pursuant to the court's scheduling order (docket entry no. 49), the defendant's response was due at noon on May 26, 2017. It was filed on May 31, 2017.

the crimes charged in the Superseding Indictment. Indeed, the court will specifically direct the jury not to draw that conclusion. Rather, as explained at length earlier, the evidence is relevant to prove Williams's exposure to and knowledge of the relevant rules he later violated, as charged in this case.

Williams focuses on the question of relevance. But on that question, tellingly, Williams says nothing about the import of the evidence. In its motion, at pages 9-12, the government set forth numerous statements made at the time by Williams under oath stating his knowledge of the bar on personal expenditures, that all occurred because he was accused of impropriety (such as, "it wasn't for my own cook out. It wasn't for my daughter's birthday. It was for the furtherance of the campaign itself."). The government also set forth the anticipated testimony of his former finance director, Aubrey Montgomery, that she personally discussed these rules with him, specifically addressing the danger of commingling personal and political expenditures. Williams addresses none of this. The relevance of this evidence, in a case in which defendant Williams's knowing violation of the rules would support his intent to defraud, is obvious, and Williams states no rebuttal.[2]

---

[2] Williams objects that Montgomery is not qualified to offer lay opinion testimony regarding the propriety of expenditures. Response at 9. Putting aside the frivolity of that claim (Montgomery is in fact one of the most experienced campaign finance aides in Pennsylvania), the relevance of the testimony does not lie in any opinion. What is relevant is that Montgomery specifically told Williams about the ethical and political problems with using personal expenditures using PAC funds, in terms that were consistent with Pennsylvania law. She further urged controls for the PAC that would limit Williams's involvement in the directing of campaign funds, give him very little access to such funds, and require vetting of disbursements to him. The relevance of the fact that Williams heard these admonitions is unquestionable.

Further, as explained in the government's motion, Williams made statements under oath showing his knowledge of the need for accurate financial reporting (such as, "Your Honor, it was my understanding that I had to list all of the sources of income that I had [on the SFI]," and "Your Honor, it was my state of mind that on March the 10th when I completed the first [SFI], that I was disclosing things in an abundance of caution that went beyond what was even asked."). That knowledge is directly relevant throughout this case, where the government asserts that Williams's failure to report many thousands of dollars of bribe payments, money received on behalf of his mother, and PAC funds (only making such reports once he knew he was under investigation) is powerful proof of his consciousness of guilt, and not just sloppy accounting or ignorance of his obligations. Williams also says nothing about this aspect of the evidence.

As stated in the motion, Montgomery will also address the personal expenditures Williams made while attending the Democratic National Convention and a Pennsylvania Society meeting, despite her admonitions. Williams stresses the undisputed political nature of these events, Response at 9, while saying nothing about the personal expenditures on which the government is focused. The evidence of Montgomery's statements to Williams about personal expenditures are relevant to show his knowledge of the restrictions.

Finally, Williams asserts that the evidence is unduly prejudicial. That is meritless. The fact that Williams was engaged in court proceedings and fined in 2009 is merely explained to set forth the context of the proceedings in which Williams made very notable and probative statements, and to demonstrate how the significance of the rules

was brought home to him. Williams nevertheless asserts, "A jury hearing about previous fines imposed for unrelated behavior will conclude that he must be guilty of the crimes charged here. In essence, the government wants to introduce this evidence to show that Williams had an unrelated ethical violation in 2009, and therefore he is guilty of doing it here." Response at 10. This is very unconvincing. The court will explicitly tell the jury that proof of a separate court proceeding or fine may not be considered as proof of guilt, and the government will not be so foolish as to suggest otherwise. In fact, the notion that a jury cannot understand the difference between the 2009 proceeding and the separate allegations at issue here suggests a rather low regard for the intelligence and savvy of the citizens who will serve as jurors.

The evidence of Williams's knowledge is extremely probative, and is not substantially outweighed by any risk of undue prejudice. The evidence related to the 2008-2009 period should be admitted.

### B. Prosecution of Bribery.

The government offers evidence of the statements made in 2014 when, as District Attorney, Williams brought bribery charges against Thomasine Tynes, then the President Judge of the Philadelphia Traffic Court, for receiving a Tiffany's bracelet worth $2,000 in exchange for a promise of official action.

Williams does not dispute the government's view that Rule 404(b) is inapplicable to this evidence. Instead, he argues that the proof is not relevant, claiming that Tynes' case "is anything but identical," because she met with a person she did not know, "and accepted a bracelet from him in direct exchange for influencing the award of a lucrative

contract," whereas here Williams accepted a stream of benefits from friends. Response at 4. But the similarities are far more notable than the differences. Tynes accepted the bracelet upon promising to assist with a nonexistent, made-up contract, and promised to be available for similar efforts. Williams accepted far greater lucre from two people, in exchange for actual official actions, and also promised to assist in future matters. In this situation, Williams's public pronouncement of the illegality of such quid pro quos is striking evidence of his knowledge and intent. It is a rare case in which the government can prove that the defendant essentially stood in public and announced his knowledge of the impropriety of the conduct in which he was then engaging; such evidence, however rare, should be welcomed to prove criminal wrongdoing.

Inexplicably, Williams states that his "prosecution of Tynes has no relevance here as not only do her actions stand in stark contrast to the instant allegations, Williams's 'knowledge' of the elements of bribery is irrelevant as lack of knowledge would not be a defense." Response at 4-5. In fact, the government must prove knowledge and intent with regard to each of the corruption charges in this case. *See Commonwealth v. Moran,* 629 Pa. 68, 87-91 (2014) (to prove bribery under state law (the object of the Travel Act offenses in this case), the government must prove that the official solicited or accepted a benefit as consideration for an exercise of official discretion, and acted intentionally, knowingly, or recklessly); Third Circuit Model Criminal Jury Instructions § 6.18.1951 (extortion charges require proof that defendant acted "knowingly and willfully"); *id.* at § 6.18.1343 (honest services charges require proof that defendant "knowingly devised a scheme to defraud [of] the intangible right of honest services"). Moreover, the proffered

evidence is central to what must be defendant Williams's argument in this case: that he was oblivious to the *quid pro quo* nature of the alleged bribery schemes. His prior recognition and prosecution of other such schemes goes to rebut that notion and to establish knowledge, intent, and absence of mistake on his part.

Finally, Williams again invokes Rule 403, asserting that the prejudicial impact of the evidence substantially outweighs the probative value. Response at 5-6. That again expresses an inexplicable lack of confidence in jurors' reasonableness and intelligence. It is obvious that whether Judge Tynes took a bracelet as a bribe has nothing to do with whether Williams accepted bribes, and is only relevant in this case with regard to Williams's knowledge and intent. A jury will readily follow the judge's instruction in this case not to consider the evidence for any other purpose. The proffered evidence should be admitted.

C. **Enforcement of City Vehicle Policy.**

The government offers evidence that, when serving as the Inspector General of the City of Philadelphia from 2005 to 2008, Williams enforced against City employees the same restrictions on vehicle use he violated as charged in this case. The evidence is directly relevant to prove Williams's knowledge.

Williams does not dispute the government's view that this evidence is not subject to Rule 404(b), as it does not concern any wrongdoing. Instead, he states it is irrelevant, setting forth his defense to the vehicle fraud charges, which is that as an elected District

Attorney he was not subject to the City's vehicle restrictions. Response at 11-12.[3] That does not warrant exclusion of the evidence of Williams's knowledge of the City restrictions. The government will offer ample evidence that the rules applied to Williams, defeating his spurious claims that he was not an "employee" or "personnel" of the District Attorney's Office he led. In a fraud case, evidence of a defendant's awareness of the rules governing his office certainly is probative of fraudulent intent. *See United States v. Fumo*, 655 F.3d 288, 302 (3d Cir. 2011) (holding that evidence that "there were rules that Fumo broke repeatedly, that those rules were clear enough for him to understand, and to show that he was deceiving the Senate when he misrepresented or omitted aspects of his actions and expenditures to avoid the perception that he had violated those rules," was relevant to show fraudulent intent, and not unduly prejudicial). Defendant Williams offers no reason to defeat the clear proposition that his enforcement of those very rules against others is probative.[4] Nor does he claim that the evidence is unduly prejudicial. It should be admitted.

---

[3] As in other pleadings, Williams does not mention that the vehicles he misused included those whose leases were paid for with federal HIDTA program funds.

[4] In his latest pleading, Williams focuses on the "take home" policies of the City, suggesting that City policies permitted him to have a City vehicle at home so he could respond to emergencies. Response at 11. But this has nothing to do with the allegations in this case. The government will not assert that it was wrongful to leave a car at Williams's home for this purpose (though, the evidence will show, he in fact virtually never used it for that purpose). What was wrongful was that Williams then used the vehicles, not to respond to emergencies, but for all personal needs, including out-of-state personal travel. If he left a car parked at his house solely for emergency use, there would be no case. But that is not what happened; what happened is that he took City and HIDTA vehicles so he would not have to buy, rent, lease, service, repair, and fuel a car for his extensive personal use. There is no City policy that permitted anyone to use a vehicle for personal

## II. Supplemental Request to Admit Evidence.

### A. Indebtedness to Zeli Colon.

The government requests permission to admit evidence that Williams borrowed money from an employee, Zeli Colon, which he did not repay. The government was aware of this fact – and disclosed it in discovery via Ms. Colon's grand jury testimony in early April 2017 – prior to filing its Rule 404(b) motion; however, we have learned of additional evidence during recent discussions with Ms. Colon in advance of trial. While this evidence is not of the type that risks an improper propensity inference, the government is providing notice under Rule 404(b) in an abundance of caution.

During the trial, the government will present evidence that, at times alleged in the Superseding Indictment, Williams was regularly in debt and living beyond his means. That fact, the jury will learn, provides the motive for every unlawful act alleged in the indictment. Williams's debt to Colon arose at a critical time, and it is necessary to explain the circumstances in order to fully explain the sequence of events that led Williams to engage in offenses charged in the indictment.

Ms. Colon was the Executive Director of Williams's political action committee ("PAC") between approximately November 2009 and June 2011. In that capacity, she managed the PAC's finances, including preparing and filing the PAC's Campaign

---

use; rather, all City, DAO, and HIDTA policies expressly forbid it.

Williams also again objects to the testimony of his predecessor, Lynne Abraham. Response at 12. She will directly contradict the statements Williams makes here, that City vehicles could be used by a District Attorney for personal purposes. Her testimony is plainly relevant for the reasons the government has previously stated at length.

Finance Reports for 2009 and 2010. Following her employment by the PAC, defendant Williams hired her at Philadelphia District Attorney's Office, where she worked until approximately January 2017. Beginning during her time at the PAC, Williams would ask Colon, and Colon would allow Williams, to use her personal credit card to pay for certain of his own personal expenses and he would later repay her. Williams himself did not have a personal credit card due to credit problems. In approximately March 2013, when Colon was employed by Williams at the DAO, Colon obtained for Williams an American Express credit card (the "Amex Card") in his name on her personal account. Colon did this because Williams continued to request use of her personal credit card, she understood him to be unable to get his own credit card due to bad credit, and Williams agreed to repay her monthly for charges he made. Williams proceeded to incur charges to the Amex Card but fell behind in the repayments, resulting in a substantial arrearage that averaged approximately $2,000, much of which remains outstanding. During preparation for trial, the government learned that Williams's repayments to Colon lapsed substantially, in particular, after his March 2013 trip to Key West, where he charged approximately $800 in car rental charges to the Amex Card.

Conceivably, a jury may find it wrongful that Williams did not repay a debt to an employee, even a modest debt. But even assuming, *arguendo*, that Rule 404(b) applies to such evidence, it is plainly admissible under that rule. The evidence is not being offered to show propensity; indeed, there is no logical propensity link between not repaying a loan, and engaging in official bribery. Rather, the evidence is offered only to explain but one of the financial circumstances facing Williams at the time he committed the charged

offenses. It is particularly relevant that Williams was under acute financial stress in or around March 2013, when he received $7,000 from Business Owner #1, and when he received round-trip airline tickets for him and his family members to travel to Key West from Business Owner #2. That is permissible proof of motive, a purpose specifically authorized in Rule 404(b). *See*, *e.g.*, *United States v. Shelow*, 2011 WL 6130974 at *8 (E.D. Pa. Dec. 9, 2011) (admitting financial condition evidence under Rule 404(b) because "the jury could infer from the evidence of Defendant's financial condition—that he was facing imminent foreclosure on his Florida home, that he owed $100,000 in back taxes, and that the IRS had placed a lien on his home—that he had a motive to obtain funds via a fraudulent investment scheme, or that he intended to use the victims money for personal expenses"). And any prejudicial impact of the evidence does not substantially outweigh its probative value, in a case in which there necessarily will be extensive evidence of Williams's indebtedness to others. The government's only purpose here is to present a full account to the jury of pertinent events, and any prejudice from the evidence regarding Colon may readily be ameliorated though an appropriate jury instruction. The government therefore asks permission for Colon to relate the full facts of her relationship with the defendant when she testifies.

      **B.**      **Additional Trip Provided By Business Owner #2.**

In addition to those benefits alleged in the Superseding Indictment, the government further intends to introduce evidence that defendant Williams accepted from Business Owner #2 round-trip airline tickets for a March 2011 trip to Key West, Florida for him and his family members. Although these benefits provided to defendant Williams

preceded those alleged in the Superseding Indictment, they are of the same ilk and, therefore, the government provides notice pursuant to Rule 404(b).

The government offers the proffered evidence for proper, non-propensity purposes; namely, to establish the defendant's knowledge, intent, and absence of mistake with respect to the counts involving Business Owner #2. In particular, the proffered evidence shows yet another instance in which defendant Williams solicited and/or accepted valuable benefits from Business Owner #2. The growing value of these items tends to show that they were not merely unilateral, token gifts. Indeed, given the critical mass of all of the benefits defendant Williams solicited and accepted from Business Owner #2, it is more likely that Williams accepted them with an understanding that they were to provided to influence him. Conversely, that same critical mass of benefits makes it less likely that he simply misread the circumstances under which he was given the gifts. In this way, the quantity and value of benefits that defendant Williams received from Business Owner #2 is relevant to Williams's knowledge and intent, and shows the absence of any mistake on Williams's part that they were given to influence his official acts. Not one link in this chain of inferences depends on notion that defendant Williams has the propensity to commit the crimes charged.

The Third Circuit's recent decision in *Repak* is on all fours with this case. There, defendant, Ronald Repak – the Executive Director of the Johnstown Redevelopment Authority ("JRA") – solicited concert and sporting event tickets, golf outings, a new roof, and excavating services, from contractors doing business with the JRA. *United States v. Repak*, 852 F.3d 230, 237 (3d Cir. 2017). Before trial, Repak moved to suppress evidence

of solicitations and items he received beyond those charged in the indictment, but the district court allowed such other-acts evidence, determining that it was admissible to prove his mental state for the charged offenses. The jury convicted Repak of Hobbs Act and federal program bribery violations involving the roof and the excavating services. On appeal, the Third Circuit affirmed the district court's Rule 404(b) ruling, reasoning as follows:

> Repak repeatedly solicited and received items from JRA contractors at great cost to the contractors; the growing costs of these items to the JRA contractors tends to show that Repak knew that these items were not unilateral token gifts; therefore, it is more likely that Repak knowingly and intentionally accepted the roof and excavating services with an understanding that those items were to influence the award of JRA contracts to those contractors.[4] This chain of inferences did not require the jury to make too great a leap in logic.

*Id.* at 245 (internal quotation marks and citations omitted). Thus, for very similar reasons as those advanced by the government in this case, the Third Circuit affirmed the district court's admission of other-acts evidence in *Repak*.

In its reasoning, the *Repak* Court relied upon two other Third Circuit decisions involving Rule 404(b) that also apply here. In *United States v. Willis*, 844 F.3d 155 (3d Cir. 2016), *cert. denied*, 2017 WL 1385990 (U.S. May 22, 2017), defendant Willis – the Executive Director of the Legislature for the U.S. Virgin Islands – was charged with soliciting and receiving a $3,000 cash bribe from one contractor, a $10,000 "loan" and a new air conditioner for his home from a second, and a $5,000 kickback from a third to ensure that those contractors would continue to be awarded public work. *Id.* at 158. Willis argued that he did not know the money he solicited and received from contractors constituted bribes and instead understood them to be loans. *Id.* at 169. To rebut this

- 13 -

argument, the government introduced evidence that, while occupying another official position, Willis accepted payment from one of the same contractors involved in the charged contracts-for-kickbacks scheme to lift a lien from a bank account. *Id.* at 169-70. In affirming Willis's conviction, the Third Circuit endorsed the non-propensity basis that the earlier bribe helped to show that the charged payments "were not loans, that they were not gifts, and that [the defendant] intended to accept cash in exchange for handing out more government contract work." *Id.* at 170.

Similarly, *United States v. Console*, 13 F.3d 641 (3d Cir. 1993), involved an insurance fraud conspiracy among lawyers and a doctor. The Third Circuit held that other-acts evidence showing the lawyers' involvement in a similar scheme with doctors other than the doctor charged in the indictment was admissible under Rule 404(b). *Id.* at 659. The Court reasoned that this evidence "tended to support the finding that [the lawyers] knew [the] bills [related to the charged conduct] were fraudulent and that they intentionally submitted them to insurance companies as part of a broader plan to defraud insurance companies through fraudulent personal injury claims." *Id.* Accordingly, it affirmed their convictions, too.

The nexus between the proffered evidence here and defendant Williams's state of mind could not be stronger. As in both *Repak* and *Willis*, the proffered evidence here involved the same payor. But even more compelling than those cases, the proffered evidence here comprises the exact same benefit (airline tickets), offered by the same payor (Business Owner #2), and accepted by the same public official (defendant Williams) just one year before the charged benefits. Taken together with the charged

benefits, evidence of the March 2011 airline tickets will go to prove defendant Williams's knowledge and intent, and absence of any mistake regarding the fact, that the things of value that Business Owner #2 offered him, and that he accepted, were designed to influence him as a public official.

Nor is the probative value of the proffered evidence substantially outweighed by its potential for causing unfair prejudice. The probative value of this evidence to establish knowledge, intent, and absence of mistake is ample. Yet the evidence itself will be par for the course in this trial. It merely adds to the ample evidence of benefits that defendant Williams solicited and accepted from Business Owner #2 over time. Indeed, the Superseding Indictment alleges that defendant Williams solicited and accepted 16 round-trip airline tickets from Business Owner #2, of which 9 involved trips to Florida. Superseding Ind. at 19, ¶ 5. The proffered evidence will make it 19 airline tickets overall, with 13 to Florida. Because the government will introduce evidence of substantial, almost identical benefits that Williams solicited and accepted from Business Owner #2, evidence of this additional trip involving three airline tickets does not involve the kind of unfair prejudice that would bar its admission at trial.

Accordingly, we respectfully request that the Court admit evidence of the March 2011 trip.

## III. Conclusion.

For these reasons, and those set forth in the government's principal motion, the government requests permission to introduce the evidence described in the motion and in this supplemental request.

Respectfully submitted,

JEFFERSON B. SESSIONS III
Attorney General of the United States

WILLIAM E. FITZPATRICK
Acting United States Attorney
for the District of New Jersey


*/s Robert A. Zauzmer*
ROBERT A. ZAUZMER
VINEET GAURI
ERIC W. MORAN
Assistant United States Attorneys

# CERTIFICATE OF SERVICE

I hereby certify that this pleading has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

        Thomas F. Burke, Esq.
        Borum Burke & DiDonato LLC
        Two Penn Center Plaza
        1500 John F. Kennedy Blvd., Ste. 900
        Philadelphia, PA  19102

                                */s Vineet Gauri*
                                VINEET GAURI
                                Assistant United States Attorney

Dated:  June 6, 2017.